**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD GREISBERG,<br><br>*Plaintiff*,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>*Defendant*. | Civil Action No. 19-12646<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

*Pro se* Plaintiff Richard Greisberg claims that he was injured by a medical device made by Defendant Boston Scientific Corporation. Currently pending before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint, D.E. 22. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion to dismiss is **GRANTED**.

---

[1] Defendant's brief in support of its motion will be referred to as "Def.'s Br." (D.E. 22); Plaintiff's opposition will be referred to as "Pl.'s Opp." (D.E. 23); Defendant's reply will be referred to as "Def.'s Reply" (D.E. 24); and Plaintiff's sur-reply will be referred to as "Pl.'s Sur-Reply" (D.E. 28).

**I.     BACKGROUND**[2]

Plaintiff suffered a pulmonary embolism in 2002. Am. Compl. at 6.[3] As a result, Plaintiff underwent an operation in which a Greenfield™ Vena Cava Filter (the "Filter")[4] was implanted into Plaintiff's superior vena cava. *Id*. at 9. Defendant manufactured the Filter. Sometime thereafter, the Filter began to tilt, which caused it to penetrate the wall of the superior vena cava and expose Plaintiff's organs to potential damage. *Id*. at 9-10. As a result, Plaintiff has suffered "heart pain, kidney problems, gastric concerns, abdominal hernia pain, [and] terrible muscle and nerve [pain]." *Id*. at 15. Plaintiff alleges that Defendant never provided "warnings for possible metal failures, fractures, tilting, migration, penetration or bleeding, and heart damage" to Plaintiff or his multiple physicians. *Id*. at 8-9.

Plaintiff filed his initial Complaint in New Jersey Superior Court on April 15, 2019. *See* D.E. 1-1, ¶ 3. Defendant thereafter timely removed the case to this Court. *See* D.E. 1. Defendant then moved to dismiss the Complaint, D.E. 3, which the Court granted, D.E. 20. The Court provided Plaintiff leave to file an amended complaint, which Plaintiff filed on February 3, 2020. D.E. 21. Defendant then moved to dismiss the Amended Complaint. D.E. 22. Plaintiff filed

---

[2] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in Plaintiff's Amended Complaint ("Am. Compl."), D.E. 21. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] Plaintiff's Amended Complaint does not include numbered paragraphs. As such, the cited page numbers associated with the Amended Complaint correspond to the page numbers assigned by the Court's electronic filing system (CM/ECF).

[4] Defendant explains that the Filter "is a permanently implanted device designed to protect against pulmonary embolism while maintaining the patency of the inferior vena cava." Def.'s Br. at 7. To the extent Plaintiff contends that the Filter was implanted in his superior vena cava – as opposed to his inferior vena cava – such a discrepancy does not impact the Court's analysis.

opposition, D.E. 23, and Defendant replied, D.E. 24.  The Court also permitted Plaintiff to file a sur-reply, D.E. 28.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."  *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Moreover, because Plaintiff is proceeding *pro se*, the Court construes the Amended Complaint liberally and holds it to a less stringent standard than papers filed by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The Court, however, need not "credit a *pro se* plaintiff's

'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## III. ANALYSIS

The Court again notes that it is difficult to discern from Plaintiff's unconventional pleadings what claims he is asserting. From the Court's review of the Amended Complaint, it appears that Plaintiff brings the following claims: (1) failure to warn; (2) design defect; (3) breach of express warranty; (4) fraudulent misrepresentation; and (5) fraudulent concealment. *See* Am. Compl. 10-18. The Court addresses each in turn.

### A. Failure to Warn & Design Defect

Plaintiff's product liability claims are governed by the New Jersey Products Liability Act (NJPLA), N.J.S.A. 2A:58C-1, *et seq.*[5] The NJPLA provides as follows:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: [(1)] deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or [(2)] failed to contain adequate warnings or instructions, or [(3)] was designed in a defective manner.

N.J.S.A. 2A:58C-2. In effect, the NJPLA "'establishe[s] the sole method to prosecute a product liability action[,]' and after its enactment, 'only a single product liability action remains.'" *Kury v. Abbott Laboratories, Inc.*, No. 11-803, 2012 WL 124026, at *3 (D.N.J. Jan. 17, 2012) (quoting *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (App. Div.), *certif. denied*, 126 N.J. 390

---

[5] The NJPLA defines "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3); *see also Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 818 (D.N.J. 2019).

(1991). As explained by the Third Circuit, the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991); *see also Walters v. Carson*, No. 11-6545, 2012 WL 6595732, at *2 (D.N.J. Dec. 17, 2012) ("It is well established in this Circuit that the [NJ]PLA creates an 'exclusive statutory cause of action' for products liability claims asserted under New Jersey law."). Here, Plaintiff fails to sufficiently allege his claims for failure to warn and design defect.

1. **Failure to Warn**

With respect to Plaintiff's failure to warn claim, the NJPLA provides as follows:

> In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction or, in the case of dangers a manufacturer or seller discovers or reasonably should discover after the product leaves its control, if the manufacturer or seller provides an adequate warning or instruction.

N.J.S.A. 2A:58C-4. Moreover, the NJPLA explains an adequate product warning as follows:

> An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used, or in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician.

*Id*. Importantly, the NJPLA also makes clear that:

> If the warning or instruction given in connection with a drug or device or food or food additive has been approved or prescribed by the federal Food and Drug Administration under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 *et seq*. or the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. § 201 *et seq*., a rebuttable presumption shall arise that the warning or instruction is adequate.

*Id.* In other words, "[u]nder New Jersey law, '[d]efendants who comply with FDA requirements are granted a rebuttable presumption that the labeling is adequate.'" *Chester v. Boston Sci. Corp.*, No. 16-02421, 2017 WL 751424, at *11 (D.N.J. Feb. 27, 2017) (quoting *Cornett v. Johnson & Johnson*, 48 A.3d 1041, 1056 (N.J. 2012), *abrogated on other grounds by McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207 (N.J. 2017)). "To overcome this presumption, a plaintiff asserting a failure to warn claim based on an inadequate label or instructions has stricter pleading requirements. A plaintiff must plead specific facts alleging 'deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects,' or 'manipulation of the post-market regulatory process[.]'" *Cornett*, 48 A.3d at 1056 (internal citations omitted).

Here, Plaintiff's failure to warn claim is deficient for several reasons. For one, "[i]n the case of certain prescription drugs and medical devices, a manufacturer satisfies its duty to warn by providing the [plaintiff's] prescribing physician with information about the dangers of the drug or device." *Seavey v. Globus Med., Inc.*, No. 11-2240, 2014 WL 1876957, at *10 (D.N.J. Mar. 11, 2014) (citing *Grobelny v. Baxter Healthcare Corp.*, 341 F. App'x 803, 806 (3d Cir. 2009)). Pursuant to this "learned intermediary" doctrine, "a drug or medical device manufacturer fulfills its duty to warn the ultimate user of its product when it provides a physician with an adequate warning about any dangerous propensities that product may have." *Id.* However, "[t]he key issue in determining whether the learned intermediary doctrine applies is whether a drug or device is directly marketed to consumers." *Id.*

As an initial matter, Plaintiff provides no factual allegations suggesting that the Filter is marketed directly to consumers – *i.e.* the "ultimate recipients of the device" – as opposed to physicians or other non-consumers. *Id.* Moreover, Plaintiff appears to concede that the Filter "came in a box with a 29 page instruction manual," which "was seen by the hospital staff and the

surgeon at the time [of Plaintiff's surgical implant]." Am. Compl. at 9. The Filter's manual is attached as an exhibit to Plaintiff's Amended Complaint. *See* D.E. 21-2, Ex. B. The manual contains a section titled "Potential Complications," which addresses the risks associated with the use of the Filter, including *inter alia*, "[m]ovement or migration of the Filter," "[f]ailure of the Filter to attach itself securely and potential migration of the Filter to the heart or lungs," and "*[p]erforation of the vena cava, adjacent blood vessels or organ by one or more hooks*." *Id*. at 8 (emphasis added). In short, it appears that the complained-of risks associated with the Filter were, in fact, disclosed.

Plaintiff also appears to premise his claim on Defendant's alleged failure to warn Plaintiff's *future* physicians who treated him *after* the implantation of the Filter. Am. Compl. at 8 (explaining that from 2008 to 2018, Plaintiff sought help for his conditions from multiple doctors, "none of [whom] ever received a warning from Boston Scientific"); *see also id*. at 9 ("I have had 11 doctors since 2008 when the [F]ilter failed and not one of them were warned of this device."). However, Plaintiff provides no relevant authority for the proposition that Defendant has a duty to warn each of Plaintiff's *future, non-prescribing* physicians (as opposed to Plaintiff's *prescribing* physician or Plaintiff, himself). Lastly, it also appears that the Filter has been subject to FDA regulation and approval.[6] Def. Br. at 14. Therefore, a rebuttable presumption arises under the NJPLA that the Filter's warning or instruction was adequate. Because Plaintiff again fails to plead specific facts alleging either "deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects" or "manipulation of the post-market regulatory process," *see Cornett*, 48 A.3d at 1056,

---

[6] Defendant states that the Filter has been "subject to federal regulations and FDA oversight," and has received 501(k) clearance from the FDA. Def.'s Br. at 14. Plaintiff, moreover, does not contest Defendant's assertion.

Plaintiff fails to overcome the NJPLA's presumption. Accordingly, Plaintiff's failure to warn claim is not adequately alleged, and therefore, the claim is dismissed.

### 2. Design Defect

"The standard of liability for each claim [under the NJPLA] is that the product 'was not reasonably fit, suitable or safe for its intended purpose.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 823 (D.N.J. 2019) (quoting *Cornett v. Johnson & Johnson*, 414 N.J. Super. 365, 396 (App. Div. 2010)). "A plaintiff may pursue a design defect claim by contending that [the product's] risk outweighs its harm, or that an alternate design exists." *Mendez v. Shah*, 28 F. Supp. 3d 282, 297-98 (D.N.J. 2014) (citing *Schraeder v. Demilec (USA) LLC*, No. 12-6074, 2013 WL 5770670, at *2 (D.N.J. Oct. 22, 2013) ("A plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm.")). Relevant here,[7] "to establish *a prima facie* case of

---

[7] The Court notes that Plaintiff has not alleged that the Filter's harm outweighed its utility pursuant to a risk-utility analysis.

> In conducting a risk-utility analysis, courts weigh the following seven factors: (1) the usefulness and desirability of the product – its utility to the user and to the public as a whole; (2) the safety aspects of the product – the likelihood that it will cause injury, and the probable seriousness of the injury; (3) the availability of a substitute product that would meet the need and not be as unsafe; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) the user's ability to avoid danger by the exercise of care in the use of the product; (6) the user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions; and (7) the feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

design defect, the plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product." *Hindermyer*, 419 F. Supp. 3d at 823-24.

Here, Plaintiff fails to sufficiently allege his design defect claim. As an initial matter, it is unclear what Plaintiff alleges was defective about the Filter's design. Plaintiff appears to assert that the Filter was defectively designed because it "was made for the first time out of titanium and was extremely stiff and unbreakable." Am. Compl. at 13. The Court notes, however, that the Filter appears to have been made from stainless steel rather than titanium. *Compare* Am. Compl. Ex. A, *with id*. Ex. K; *see also* Def.'s Br. at 8, n.1. In addition, Plaintiff claims that the Filter's "stiff[ness] just put more pressure on the [Filter's] legs and cause[d] the [F]ilter to perforate[,]" but he also claims that "previous versions" of the Filter "would break off the many legs [that they] had [which] would travel inside the heart and cause death." *Id*. Plaintiff further describes these "previous versions" of the Filter as "flimsy" and that their "legs would allow the device to tilt and migrate and then penetrate the organ[s]." *Id*. As such, even assuming the Filter's "stiffness" was a design defect, Plaintiff fails to plead any facts from which the Court can reasonably infer that a practical and feasible alternative design existed that would have reduced and/or prevented the harm caused to Plaintiff. *See Hindermyer*, 419 F. Supp. 3d at 823-24 (explaining that a plaintiff must sufficiently allege "the availability of a technologically feasible and practical alternative design

---

*Hindermyer*, 419 F. Supp. 3d at 825 n.3. Plaintiff neither pleads these factors nor any factual allegations in support of them. Accordingly, the Court limits its analysis to whether Plaintiff has sufficiently alleged an alternative design.

9

that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product").

Plaintiff also appears to contend that the "straight" design of the Filter's legs "allowed the device, once tilted, to go through the wall of the organ." Am. Compl. at 13. Plaintiff adds that future versions of the Filter began using "curved" legs, presumably to remedy this issue. *Id.* However, Plaintiff also alleges that the "curved" legs "did not work any better" and were "pushed [] through the wall anyway." *Id*. at 13-14. Again, even assuming that the Filter's "straight" legs were a design defect, Plaintiff fails to plead any facts from which the Court can reasonably infer that the use of "curved legs" – or any other feasible and practical alternative design – would have reduced and/or prevented the harm caused to Plaintiff.[8] In sum, Plaintiff does not sufficiently allege facts indicating that the Filter's risks outweighed its utility or that the Filter could have been alternatively designed. Accordingly, the Court dismisses Plaintiff's claim for design defect.

### B. Breach of Express Warranty

Plaintiff next brings a claim for breach of an express warranty. A claim for breach of an express warranty is not subsumed by the NJPLA. *See* N.J.S.A. § 2A:58C-1(b)(3). In New Jersey, a plaintiff must allege the following to state a claim for breach of an express warranty: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J.S.A. § 12A:2-313); *see also Topoleski v. Veshi*, No. 16-1820, 2019 WL 149721, at *6 (N.J. Super. Ct. App. Div. Jan. 8, 2019).

---

[8] The Court further notes that Plaintiff fails to allege that any of the Filter's alleged alternative designs "were capable of being made when Defendant[] manufactured the device in question." *See Hindermyer*, 419 F. Supp. 3d at 825-26.

10

With respect to the "basis of the bargain" element, a plaintiff must allege that she "read, heard, saw or knew of the advertisement containing the [express warranty]" when choosing to use the product. *Metcalfe v. Biomet, Inc.*, No. 18-456, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019) (citing *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992)).

Here, Plaintiff alleges in conclusory fashion that Defendant "made positive facts that formed the basis of [his] choice for [the Filter]." Am. Compl. at 17. Plaintiff vaguely claims that "ads and info supplied at the time of insertion [of the Filter] indicate[d] [that] the [F]ilter [was] safe, effective, and fit for implantation." *Id*. Notably, however, Plaintiff relies on two product brochures regarding the Filter that were published *years after* the Filter was implanted in Plaintiff in 2002. *See* D.E. 21-11, Ex. K; D.E. 21-13, Ex. M. As such, Plaintiff could not have relied upon these brochures when choosing the Filter, and therefore, the brochures cannot serve as the basis for Plaintiff's express warranty claim. *See, e.g.*, *Metcalfe*, 2019 WL 192902, at *4 ("[I]f a plaintiff does not plead that he saw the alleged warranty, then a court cannot *reasonably* infer that the warranty formed a basis of the bargain.") (emphasis in original)).

Moreover, to the extent Plaintiff vaguely alleges that Defendant's "ads and info" represented that the Filter "had trusted performance, timeless design, and established filter performance," such generalized statements about the Filter are insufficient to support a claim for breach of an express warranty. *See Hindermyer*, 419 F. Supp. 3d at 830 ("[S]tatements that are nothing more than mere puffery are not considered specific enough to create an express warranty.") (quoting *Snyder*, 792 F. Supp. 2d at 721); *see also* N.J.S.A. § 12A:2-313(2) ("[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or

11

commendation of the goods does not create a warranty."). Accordingly, the Court dismisses Plaintiff's claim for breach of an express warranty.

### C. Fraudulent Concealment & Fraudulent Misrepresentation

Plaintiff also appears to bring claims for fraudulent misrepresentation and fraudulent concealment. Am. Compl. at 18. Both claims, however, are subsumed by the NJPLA. As previously stated, the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola Inc.*, 934 F.2d at 492. The New Jersey Supreme Court has noted that "'[t]he language chosen by the Legislature in enacting the [NJ]PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer and other products.'" *Sinclair v. Merck & Co.*, 195 N.J. 51, 65 (2008) (quoting *In re Lead Paint Litig.*, 191 N.J. 405, 436-37 (2007)).

To this end, courts in this district have routinely "found that the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product." *Hindermyer*, 419 F. Supp. 3d at 819; *see Brown v. Philip Morris, Inc.*, 228 F. Supp. 2d 506, 517 (D.N.J. 2002) ("New Jersey treats all product liability actions the same, regardless of the theory asserted. Plaintiffs cannot recast their product liability claims as fraud claims."); *Kury*, 2012 WL 124026, at *4 (noting that "the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product"); *Mendez*, 28 F. Supp. 3d at 302 (dismissing plaintiff's fraud-based claims because, "ultimately, the essence of her claim is that the misrepresentations resulted in physical harm from the product").

Here, Plaintiff's fraud-based claims are premised on the harm caused by the Filter. Plaintiff alleges that Defendant "misrepresented that the [] Filter's design . . . is the most likely to protect from adverse events, and the [Filter is] designed to provide protection against penetration of the

organ as has happened [to] the plaintiff in this case." Am. Compl. at 18. Plaintiff further alleges that "the information of harm and death was always hidden from the public and never was it revealed." *Id*. However, Plaintiff may not repackage his product liability claims as fraud claims. *See Brown*, 228 F. Supp. 2d at 517 ("New Jersey treats all product liability actions the same, regardless of the theory asserted. Plaintiffs cannot recast their product liability claims as fraud claims."). Accordingly, the Court dismisses Plaintiff's claims for fraudulent misrepresentation and fraudulent concealment.[9]

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Amended Complaint is **GRANTED**. When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, the latter of which affords a plaintiff with leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002). The district court may deny leave to amend only if (1) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party, or (2) the amendment would be futile. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Although Plaintiff is proceeding *pro se*, he has again failed to assert a cognizable claim in this matter. Importantly, the

---

[9] The Court notes that, even if Plaintiff's fraud-based claims were not subsumed by the NJPLA, Plaintiff's claims would still fail to satisfy the heightened pleading standard required by Fed. R. Civ. P. 9(b). "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), a party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Plaintiff's fraud-based allegations fail to meet this heightened pleading standard.

crux of his current claims were virtually identical to claims that were dismissed in the Court's previous Opinion dated January 17, 2020. *See* D.E. 19. Thus, the Court has real concerns that any future amendment would be futile. However, the Court will permit Plaintiff one additional opportunity to file another amended complaint. Plaintiff has thirty (30) days to do so. If Plaintiff does not file a second amended complaint within thirty days, this matter will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: August 3rd, 2020

John Michael Vazquez, U.S.D.J.