<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RICHARD GREISBERG, <br><br> *Plaintiff*, <br><br> v. <br><br> BOSTON SCIENTIFIC CORPORATION, <br><br> *Defendant*. | Civil Action No. 19-12646 <br><br> <u>OPINION</u> |

<u>**John Michael Vazquez, U.S.D.J.**</u>

*Pro se* Plaintiff Richard Greisberg claims that he was injured by a medical device made by Defendant Boston Scientific Corporation. Pending before the Court is Defendant's motion to dismiss, D.E. 33, Plaintiff's Second Amended Complaint, D.E. 32 ("SAC"). The Court reviewed the submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Defendant's motion to dismiss is granted.

## I.    BACKGROUND

This is the third Complaint Plaintiff has filed in this matter. *See* D.E. 1 ("Compl."); D.E. 21 ("FAC"). The previous Complaints alleged that Plaintiff suffered a pulmonary embolism in 2002, FAC at 6,[2] and that, as a result, a Greenfield™ Vena Cava Filter (the "Filter") manufactured

---

[1] Defendant filed a brief in support at D.E. 33-1 ("Br."). Plaintiff failed to file any opposition to the motion to dismiss.

[2] Plaintiff's SAC does not include numbered paragraphs. Citations to page numbers in the SAC correspond to the page numbers assigned by the Court's electronic filing system.

by Defendant was surgically implanted into Plaintiff's superior vena cava.  *Id*. at 9.  The previous Complaints also detail that, sometime after installation, the Filter began to tilt, causing it to penetrate the wall of the superior vena cava and expose Plaintiff's organs to potential damage.  *Id*. at 9-10.  The SAC, which is now the operative pleading, omits this information.  Without the substantive allegations from Plaintiff's previous Complaints, it is difficult for the Court to discern the basis for this suit.   This defect alone is a sufficient basis to dismiss the SAC.   Nonetheless, because Plaintiff is proceeding *pro se*, the Court construes the SAC liberally and holds it to a less stringent standard than papers filed by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, the Court incorporates by reference here the comprehensive factual backgrounds from its previous Opinions, D.E. 19 ("MTD Op."), D.E. 30 ("2d MTD Op.").

 Plaintiff filed his SAC on August 26, 2020.  The SAC is presented in a narrative format – Plaintiff appears to provide responses to the Court's findings in the 2d MTD Op.  *See generally* SAC.  As best the Court can discern, the SAC contains the following Counts: (1) failure to warn under the New Jersey Products Liability Act, N.J. Stat. Ann. 2A:58C-1, *et seq.* ("NJPLA"); (2) design defect under the NJPLA; (3) manufacturing defect under the NJPLA; and (4) breach of express warranty.  The present motion followed.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."  *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).[3]

In addition to the complaint, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  In addition, the Court may also rely on "a document *integral to or explicitly relied* upon in the complaint."  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis in original (citation omitted)).

As discussed, because Plaintiff is proceeding *pro se*, the Court construes the SAC liberally and holds it to a less stringent standard than papers filed by attorneys.  *Haines*, 404 U.S. at 520.  The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'"

---

[3] While admitting that he "can only express conclusory allegations at this time," Plaintiff spends the opening portion of his SAC complaining that the Court should not apply the pleading standards set forth in *Twombly*, 550 U.S. at 570 and *Iqbal*, 556 U.S. at 678.  SAC at 2-4.  The Court declines this invitation.

*Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## III.   ANALYSIS

As discussed, the Court construes the SAC as attempting to state the following Counts: (1) failure to warn under the NJPLA; (2) design defect under the NJPLA; (3) manufacturing defect under the NJPLA; and (4) breach of express warranty.

### A.  Failure to Warn, Design Defect, & Manufacturing Defect

Plaintiff's product liability claims are governed by the NJPLA.[4]  The NJPLA provides as follows:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: [(1)] deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or [(2)] failed to contain adequate warnings or instructions, or [(3)] was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.  In effect, the NJPLA "'establishe[s] the sole method to prosecute a product liability action[,]' and after its enactment, 'only a single product liability action remains.'" *Kury v. Abbott Laboratories, Inc.*, No. 11-803, 2012 WL 124026, at *3 (D.N.J. Jan. 17, 2012) (quoting *Tirrell v. Navistar Int'l, Inc.,* 591 A.2d 643, 647 (N.J. Sup. Ct. App. Div. 1991)).  The Third Circuit explained that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview."  *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir.

---

[4] The NJPLA defines "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J. Stat. Ann. § 2A:58C-1(b)(3); *see also Hindermyer v. B. Braun Med. Inc*., 419 F. Supp. 3d 809, 818 (D.N.J. 2019).

1991); *see also Walters v. Carson*, No. 11-6545, 2012 WL 6595732, at *2 (D.N.J. Dec. 17, 2012)

("It is well established in this Circuit that the [NJ]PLA creates an 'exclusive statutory cause of

action' for products liability claims asserted under New Jersey law.").

### 1.  Failure to Warn

With respect to Plaintiff's failure to warn claim, the NJPLA provides as follows:

> In any product liability action the manufacturer or seller shall not be
> liable for harm caused by a failure to warn if the product contains an
> adequate warning or instruction or, in the case of dangers a
> manufacturer or seller discovers or reasonably should discover after
> the product leaves its control, if the manufacturer or seller provides
> an adequate warning or instruction.

N.J. Stat. Ann. § 2A:58C-4.   Moreover, the NJPLA explains an adequate product warning as

follows:

> An adequate product warning or instruction is one that a reasonably
> prudent person in the same or similar circumstances would have
> provided with respect to the danger and that communicates adequate
> information on the dangers and safe use of the product, taking into
> account the characteristics of, and the ordinary knowledge common
> to, the persons by whom the product is intended to be used, or in the
> case of prescription drugs, taking into account the characteristics of,
> and the ordinary knowledge common to, the prescribing physician.

*Id*.  Importantly, the NJPLA also makes clear that

> [i]f the warning or instruction given in connection with a drug or
> device or food additive has been approved or prescribed by the
> federal Food and Drug Administration under the "Federal Food,
> Drug, and Cosmetic Act," 52 Stat. 1040, 21 U.S.C. § 301 *et seq*. or
> the "Public Health Service Act," 58 Stat. 682, 42 U.S.C. § 201 *et
> seq*., a rebuttable presumption shall arise that the warning or
> instruction is adequate.

*Id*.  In other words, "[u]nder New Jersey law, '[d]efendants who comply with FDA requirements

are granted a rebuttable presumption that the labeling is adequate.'" *Chester v. Boston Sci. Corp.*,

No. 16-02421, 2017 WL 751424, at *11 (D.N.J. Feb. 27, 2017) (quoting *Cornett v. Johnson &*

*Johnson*, 48 A.3d 1041, 1056 (N.J. 2012), *abrogated on other grounds by McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207 (N.J. 2017)).  "To overcome this presumption, a plaintiff asserting a failure to warn claim based on an inadequate label or instructions has stricter pleading requirements.  A plaintiff must plead specific facts alleging 'deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects,' or 'manipulation of the post-market regulatory process[.]'"  *Cornett*, 48 A.3d at 1056 (internal citations omitted).

The Court previously found Plaintiff's failure to warn claim in the FAC deficient.  The Court found that Plaintiff had failed to allege that Defendant breached its duties under the learned intermediary doctrine.  2d MTD Op. at 6.  Specifically, "[i]n the case of certain prescription drugs and medical devices, a manufacturer satisfies its duty to warn by providing the [plaintiff's] prescribing physician with information about the dangers of the drug or device."  *Seavey v. Globus Med., Inc.*, No. 11-2240, 2014 WL 1876957, at *10 (D.N.J. Mar. 11, 2014) (citing *Grobelny v. Baxter Healthcare Corp.*, 341 F. App'x 803, 806 (3d Cir. 2009)).  Pursuant to this "learned intermediary" doctrine, "a drug or medical device manufacturer fulfills its duty to warn the ultimate user of its product when it provides a physician with an adequate warning about any dangerous propensities that product may have."  *Id*.  However, "[t]he key issue in determining whether the learned intermediary doctrine applies is whether a drug or device is directly marketed to consumers."  *Id*.  The Court previously found that Plaintiff provided no factual allegations suggesting that the Filter was marketed directly to consumers as opposed to physicians or other non-consumers.  2d MTD Op. at 6.  In addition, based on a manual attached to the FAC, the Court concluded that "the complained-of risks associated with the Filter were, in fact, disclosed."  *Id*. at 7.

Plaintiff's SAC fails to provide any allegations to support a reasonable inference that the Filter was marketed directly to consumers as opposed to physicians.  And as with the FAC, Plaintiff continues to allege that Defendant provided no warnings whatsoever as to the Filter.  *Compare* SAC at 11 ("[N]o warnings or instructions were given proper treatment for adverse reactions . . . .") *with* FAC at 8 ("Th[e] [Filter's] manual as you can see has absolutely not one word of warnings or instructions or information concerning the dangers of this device to the recipient.").  Plaintiff now claims that the manual he attached as an exhibit to his FAC is a "fraud" because it was for "titanium filters" not "a steel filter device."  SAC at 5; *id*. at 19.  Thus, although warnings existed as to the titanium filters, Plaintiff contends that the steel Filter he received was not accompanied by any warnings.  *Id*. at 5, 14.  Yet Plaintiff still appears to admit that a "written paper . . . booklet [] comes with the device."  *Id*. at 18.

In fact, Defendant now provides the "Stainless Steel Greenfield Vena Cava Filter Directions for Use available at the time of Plaintiff's 2002 placement procedure."  D.E. 33-2 at 1, ¶ 3.[5]  The instructions warn of the following potential complications: (1) "[i]ncorrect release or placement of filter"; (2) "[m]ovement or migration of the Filter"; (3) "[f]ormation of clots on the Filter which could result in complete blockage of blood flow through the vena cava"; (4) "[h]ematoma (bruise) or bleeding at the insertion site"; (5) "[i]nfection"; (6) "[f]ailure of the Filter to attach itself securely and potential migration of the Filter to the heart and lungs; (7) [p]erfotation of the vena cava, adjacent blood vessels or organ by one or more hooks"; (8) "[p]ulmonary embolism due to introducer catheter manipulation leading to dislodgement of clot during Filter placement"; (9) "[a]ir embolism during Filter insertion"; (10) "[i]nsertion site thrombosis"; (11)

---

[5] Because Plaintiff explicitly refers to the instruction booklet for the Filter in his SAC, SAC at 14, the Court considers it.  *Higgins*, 281 F.3d at 388.

"[d]eath due to movement of clots to the heart or lungs." D.E. 33-3 at 9. These warnings appear to be identical to those associated with the titanium Filter, discussed in the Court's Opinion dismissing the FAC. *See* 2d MTD Op. at 6-7. And the warnings provided in the booklet are nearly identical to those which Plaintiff now argues should have been made. *Compare* SAC at 13 (claiming that Defendant should have warned the "device can cause serious injury or death," can "break apart," "tilt," and "migrate") *with* D.E. 33-3 at 9 (warning of, among other things, "migration," "movement" and "death due to movement."). It therefore appears that the complained-of risks associated with the Filter were, in fact, disclosed. Plaintiff's argument that no warnings were provided lacks merit.

The Court also previously rejected Plaintiff's failure to warn claims based on an alleged failure to warn Plaintiff's *future* physicians who treated him *after* the implantation of the Filter. 2d MTD Op. at 7-8. The Court rejected those allegations because Plaintiff provided "no relevant authority for the proposition that Defendant has a duty to warn each of Plaintiff's *future, non-prescribing* physicians (as opposed to Plaintiff's *prescribing* physician or Plaintiff, himself)." *Id*. at 7. In the SAC, Plaintiff still argues that Defendant is liable for failing to warn Plaintiff's future physicians who treated him after the implantation of the Filter. *See e.g.*, SAC at 10 ("Absolutely no warnings can be discovered or shown to advise on future expectations."). However, Plaintiff also concedes that Defendant "[is] correct" that it "had no obligations to warn [his] future physicians about the side effects of the device." *Id*. at 12. Even ignoring this acknowledgement by Plaintiff, he still fails to provide any authority indicating that Defendant had a duty to warn each of Plaintiff's future, non-prescribing physicians. Accordingly, any claim in the SAC seeking to hold Defendant liable for failing to warn Plaintiff's future physicians is dismissed for the same reasons stated in the FAC.

In its Opinion dismissing the FAC, the Court also found that because the Filter was subject to FDA regulation and approval, Plaintiff failed to overcome the rebuttable presumption that the Filter's warnings and instructions were adequate.  2d MTD Op. at 7-8.  The Court noted that Plaintiff failed to plead specific facts alleging either "deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects" or "manipulation of the post-market regulatory process," *id.* (quoting *Cornett*, 48 A.3d at 1056).  The SAC fails to add any plausible facts alleging "deliberate concealment or nondisclosure of after-acquired knowledge of harmful effects" or "manipulation of the post-market regulatory process," by Defendant.  *Id*.  Accordingly, Plaintiff's failure to warn claims are dismissed.

## 2.  Design Defect

Plaintiff also attempts to reassert a claim for design defect.  "The standard of liability for each claim [under the NJPLA] is that the product 'was not reasonably fit, suitable or safe for its intended purpose.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 823 (D.N.J. 2019) (quoting *Cornett v. Johnson & Johnson*, 998 A.2d 543, 561 (N.J. Sup. Ct. App. Div. 2010), *aff'd as modified*, 48 A.3d 1041 (N.J. 2012)).  "A plaintiff may pursue a design defect claim by contending that [the product's] risk outweighs its harm, or that an alternate design exists." *Mendez v. Shah*, 28 F. Supp. 3d 282, 297-98 (D.N.J. 2014) (citing *Schraeder v. Demilec (USA) LLC*, No. 12-6074, 2013 WL 5770670, at *2 (D.N.J. Oct. 22, 2013) ("A plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm.")).  Relevant here,[6] "to establish *a prima*

---

[6] As to a risk-utility analysis, the SAC makes a conclusory allegation that "IN THIS CASE THE FILTERS HARM DOES NOT OUTWEIGH [*sic*] THE RISK-UTILITY."  SAC at 25 (capitalization in original).  Assuming that Plaintiff meant to assert that the harm *does* outweigh the risk-utility, the SAC fails to plead the relevant risk utility factors, *see* 2d MTD Op. at 8, n. 7 (citing *Hindermyer*, 419 F. Supp. 3d at 825 n.3), or any factual allegations in support of them.

*facie* case of design defect, the plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product." *Hindermyer*, 419 F. Supp. 3d at 823-24.

As to the FAC, the Court previously found that Plaintiff had failed to sufficiently state a design defect claim. 2d MTD Op. at 9. The Court first concluded that Plaintiff failed to plead any facts from which the Court could reasonably infer that a "practical and feasible alternative design existed that would have reduced and/or prevented the harm caused to Plaintiff." *Id*. (citing *Hindermyer*, 419 F. Supp. 3d at 823-24). As to Plaintiff's suggestion that Defendant could have manufactured the filter using "curved" legs, the Court found that Plaintiff had failed to plead any facts from which the Court could reasonably infer that such curved legs "would have reduced and/or prevented the harm caused to Plaintiff." *Id*. at 10. The Court also noted that Plaintiff had failed to allege that any of the Filter's alleged alternative designs "were capable of being made when Defendant[] manufactured the device in question." *Id*. at 10 n. 8 (citing *Hindermyer*, 419 F. Supp. 3d at 825-26).

In the SAC, Plaintiff now alleges, in conclusory fashion, that "we know the design was defective because it was recalled by both the FDA and BSC." SAC at 22; *see also id*. at 10. These allegations fail to identify a specific defect and further fail to specify the reason for the alleged recall. Plaintiff further claims that,

> the design defect was to make fewer number of support legs and make them very stiff, like never before. The defective thicker leg was not able to resist pushing itself thru the wall of the organ . . . the tip of the leg . . . was just to [*sic*] sharp and needed to be wider at the tip.

SAC at 10.  Plaintiff adds that the "curve design" on the device allowed it to penetrate the wall easily.  *Id*.  As to a feasible alternative, Plaintiff indicates that the answer was to "use a paddle design . . . to keep it from tilting and migrating thru [*sic*] the wall . . . a broader kind of paddle end on the leg would be an answer."  *Id*. at 17.

Although Plaintiff has attempted to put forward an alternative design, Plaintiff still fails to allege that such a design was "technologically feasible" and available, *Hindermyer*, 419 F. Supp. 3d at 825-26, at the time the Filter was installed in 2002.  Plaintiff asserts that this hypothetical paddle design would have resolved the problem but fails to allege that such a design currently exists, let alone that such a design existed at the time the Filter was installed.  The SAC purports to identify alternatives to Defendant's Filter, without explaining whether those Filter's employed the paddle design Plaintiff claims was necessary.  SAC at 25.  And even assuming those filters did employ the paddle design, those filters are not apt comparisons because, as Plaintiff admits, "[i]n that period of time all the other filters (6) on the market were considered temporary," whereas Defendant's Filter was designed to be "permanent."  *Id*. at 27.  Non-permanent or "retrievable filters are inadequate comparators" to permanent filters.  *Hindermyer*, 419 F. Supp. 3d at 825-26.  Accordingly, Plaintiff's design defect claim is also dismissed.

### 3.  Manufacturing Defect

After repeating the types of claims covered by the NJPLA, Plaintiff states that "[t]he filter implanted clearly deviated from the units available at the time.  Fewer legs, stiffer legs, and different physical structure."  SAC at 10.  The Court construes these allegations as attempting to state a manufacturing defect claim.  "To allege a manufacturing defect, the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'"  *Hindermyer*, 419 F. Supp. 3d at 826 (quoting *Mendez v. Shah*, 28 F. Supp. 3d 282, 298 (D.N.J.

2014). Should "the particular product used by the plaintiff fail to conform to those standards or other units of the same kind, it is a manufacturing defect." *Id*.

Plaintiff has failed to sufficiently allege a manufacturing defect, providing only conclusory allegations. The SAC does not contain any non-conclusory allegations supporting a reasonable inference that there was a "particular error or mishap in the manufacturing process that caused [his] [] Filter to deviate from [Defendant's] own standards." *Hindermyer*, 419 F. Supp. 3d at 826. Nor does the SAC allege that the Filter "deviated from [a] design specification" or was somehow different from "the same product as manufactured according to the manufacturer's standards." *Martinez v. Union Officine Meccaniche S.p.A.*, No. CV207327SDWLDW, 2021 WL 303010, at *4 (D.N.J. Jan. 29, 2021). Accordingly, to the extent that Plaintiff has attempted to assert a manufacturing defect claim, that claim is dismissed.

### B. Breach of Express Warranty

Plaintiff also reasserts a claim for breach of an express warranty. A claim for breach of an express warranty is not subsumed by the NJPLA. *See* N.J. Stat. Ann. § 2A:58C-1(b)(3). A plaintiff must allege the following to state a claim for breach of an express warranty: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (citing N.J. Stat. Ann. § 12A:2-313); *see also Topoleski v. Veshi*, No. 16-1820, 2019 WL 149721, at *6 (N.J. Super. Ct. App. Div. Jan. 8, 2019). With respect to the "basis of the bargain" element, a plaintiff must allege that she "read, heard, saw or knew of the advertisement containing the [express warranty]" when choosing to use the product. *Metcalfe v. Biomet, Inc.*, No. 18-456, 2019 WL 192902, at *3 (D.N.J. Jan. 15, 2019)

(citing *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *overruled on other grounds*, 505 U.S. 504 (1992)).

The Court previously found that the FAC's breach of express warranty claim was insufficiently pled.  The Court rejected Plaintiff's claims to the extent that they were based on "two product brochures regarding the Filter that were published *years after* the Filter was implanted in Plaintiff in 2002."  2d MTD Op. at 11 (emphasis in original).  The Court also rejected Plaintiff's efforts to plead a breach of express warranty claim based on generalized statements that the Filter "had trusted performance, timeless design, and established filter performance," *id*. at 11-12.

The SAC indicates that Plaintiff "agree[s] with the Court that advertising [he] used to support [his breach of express warranty claim] was newer and not indicative of what was available in 2002."  SAC at 27.  Plaintiff discusses his doctor's purported recollection of the advertisements at the time the Filter was installed.  *Id*.  But these allegations do not support an inference that Plaintiff "read, heard, saw or knew of the advertisement containing the [express warranty]" when choosing to use the Filter. *See Metcalfe,* No. 18-456, 2019 WL 192902, at *3.  In sum, Plaintiff fails to sufficiently allege any affirmations concerning the Filter that he relied on that formed the "basis of the bargain" for the Filter.  Plaintiff's breach of express warranty claim is dismissed.

## IV.   CONCLUSION[7]

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's SAC is granted.  When dismissing a case brought by a *pro se* plaintiff, a court must decide whether the dismissal will be with prejudice or without prejudice, the latter of which affords a plaintiff with leave to amend.

---

[7] The Court also previously dismissed fraud-based claims asserted in Plaintiff's FAC as subsumed under the NJPLA and further concluded that, even if not subsumed, such claims would still fail to satisfy the heightened pleading standard required by Fed. R. Civ. P. 9(b).  2d MTD Op. at 12-13, n. 9.  Plaintiff's SAC does not appear to allege any fraud-based claims.

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002).  The district court may deny leave to amend only if (1) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party, or (2) the amendment would be futile.  *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).  Plaintiff has again failed to assert a cognizable claim in this matter.  Importantly, the crux of his current claims are virtually identical to claims that were dismissed in the Court's previous Opinions.  *See* MTD. Op; 2d MTD. Op.  Plaintiff has had three opportunities to file a sufficient pleading.  The Court therefore concludes that Plaintiff has not sufficiently pled his claims because he is unable to do so.  Accordingly, any attempted amendment would be futile.

For the foregoing reasons, Defendants' motion to dismiss, D.E. 32, is granted.  The matter is dismissed with prejudice.[8]  An appropriate Order accompanies this Opinion.

Dated: June 9th, 2021

John Michael Vazquez, U.S.D.J.

---

[8] Plaintiff recently filed a letter with the Court seeking to "add the name of [his] wife" to his Complaint because he "will not be alive to complete this process . . . ." D.E. 34.  Because Plaintiff is still alive, this request is premature.   In addition, because the Court is dismissing the Complaint with prejudice, the Court will not permit Plaintiff to file an amended Complaint adding his wife as a party.  For Plaintiff's benefit, the Court notes that both Federal Rule of Civil Procedure 25 and Federal Rule of Appellate Procedure 43 contain rules governing substitution in the event of a party's death.